# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>Information Associated with Cellular<br>Telephone Assigned Call Number (202)<br>981-0442, That Is Stored at Premises<br>Controlled by T-Mobile, USA | )<br>)<br>)   Case No.   1:19mj126<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

4 Sylvan Way, Parsippany, NJ 07054

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):

See Attachment A

located in the _____ District of _____ New Jersey _____ , there is now concealed (*identify the person or describe the property to be seized*):

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (*check one or more*):

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 | Hobbs Act |
| 18 USC 924(m) | Theft of Firearms from a Licensed Dealer |

The application is based on these facts:
See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael B. Newsome, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/12/19

_____
*Judge's signature*

City and state:  Greensboro, North Carolina

L. Patrick Auld, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with a certain cellular telephone assigned call number (202) 981-0442, that is stored at premises owned, maintained, controlled, or operated by T-Mobile, USA, a wireless telephone service provider, headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.

## Particular Things to be Seized

I. **Information to be disclosed by T-Mobile, USA**

To the extent that the information described in Attachment A is within the possession, custody, or control of T-Mobile, including any information that has been deleted but is still available to T-Mobile or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), T-Mobile is required to disclose to the government the following information pertaining to a certain cellular telephone assigned call number (202) 981-0442, as more fully described in Attachment A, for the time period September 1, 2018 through December 1, 2018 except as otherwise stated below:

1. **Specialized Location Records**: All call, text and data connection location information, related to all specialized carrier records which may be referred to as TDOA or Timing Advance Information, Mediation Records, E9-1-1, and/or Historical GPS/Mobile Locate Information which shows GPS location (longitude and latitude) and Cell-Site and sector of the device in relationship to the network when connected to the network for the cellular telephone number referenced above between October 22, 2018 and November 18, 2018;

2. **Call/Text/Data Detail Records**: All records associated with the above referenced cellular telephone number, to include all numbers that communicate with the above listed cellular telephone number relating

1

to all delivered and undelivered inbound and outbound calls, text messages, and text message content to the above listed cellular telephone number, all voice mail, and all data connections, and to include Cell-site and sector, date, time, direction, duration, number called or text to and/or received from, and bytes up/down, information related to each call, text or data connection, all text message content, and voicemails, as well as Call to Destination/Dialed Digits search for the above listed cellular telephone number. Please preserve all cell-site and sector information related to each call, text or data connections;

3.    **Electronically Stored Records**: All records associated with the above referenced cellular telephone number, to include all stored communication or files, including voice mail, text messages, including numbers text to and received from and all related content, e-mail, digital images (*e.g.*, pictures), contact lists, video calling, web activity (name of web site or application visited or accessed), domain accessed, data connections (to include Internet Service Providers ("ISPs"), Internet Protocol ("IP") addresses, IP Session data, IP Destination Data, bookmarks, data sessions, name of web sites and/or applications accessed), date and time when all web sites, applications, and/or third party applications were accessed and the duration of each web site, application, and/or third party application was accessed, and any other files including all cell site and sector information associated with each

2

connection and/or record associated with the above listed cellular telephone number;

4. **Carrier Key** related to call detail, text messages, data connections, IP logs, IP Sessions, web site and/or application connections, and cell site information;

5. **Cloud Storage**: Content stored in remote storage or 'cloud accounts' associated with the above listed cellular telephone number including, but not limited to, contacts, call logs, SMS and MMS messages with associated content including audio, video, and image files, digital images and videos, and files or documents;

6. **Cell Site List(s)**: List of all cell-sites for all state(s) in which the above records used cell locations. Cell site lists to include switch, cell-site number, name, physical address, longitude and latitude, all sectors associated with each cell-site, azimuth, and beam-width of each related sector;

7. **Subscriber Records:**

   a. Names (including subscriber names, user names, and screen names);

   b. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   c. Local and long distance telephone connection records;

   d. Records of session times and durations, and the temporarily

3

assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

e. Length of service (including start date) and types of service utilized;

f. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

g. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h. Means and source of payment for such service (including any credit card or bank account number) and billing records.

8. Any other records and other evidence relating to the above listed cellular telephone number. Such records and other evidence include correspondence and other records of contact by any person or entity about the above listed cellular telephone number, the content and connection logs associated with or relating to postings, communications and any other activities to or through the above listed cellular telephone

4

number, whether such records or other evidence are in electronic or other form.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 18 U.S.C. § 1951 (Hobbs Act) and Title 18 U.S.C. § 924(m) (Theft of Firearms from a Licensed Dealer) involving RAQUAN JOHN ZIMMERMAN and/or DAWAN RASHAWN SALTERS, and Metro PCS number (202) 981-0442 during the period between September 1, 2018 to December 1, 2018 except as otherwise stated below:

1. Historical precision location information that provides historical geographic location of the user's mobile device from October 22, 2018 through November 18, 2018;

2. Any communication referencing the theft of firearms;

3. Any communication referencing armed robberies;

4. Any communication referencing firearms trafficking;

5. Any communication referencing gun dealers;

6. Any communication referencing preparatory steps taken in furtherance of the scheme;

7. Communication between Raquan ZIMMERMAN, Dawan SALTERS, and others, who may be involved in the scheme and/or related crimes;

8. Records relating to who created, used, or communicated with the account holder from October 22, 2018 through November 18, 2018;

In the Matter of the Search of:
Information Associated with Cellular
Telephone Assigned Call Number (202)
981-0442, That Is Stored at Premises
Controlled by T-Mobile, USA
4 Sylvan Way, Parsippany, NJ 07054

Case No. 1:19 MJ 126

## AFFIDAVIT IN SUPPORT OF A
## SEARCH AND SEIZURE WARRANT

I, Michael B. Newsome, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (202) 981-0442, that is stored at premises owned, maintained, controlled, or operated by T-Mobile, USA, hereinafter referred to as "T-Mobile", a wireless telephone service provider, headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since May 2017. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Criminal Investigator Training Program, as well as the ATF National Academy, where I received extensive training in the investigation of firearms, controlled substances, arson, and explosives offenses. I have participated in investigations involving all of these areas. Prior to my career with ATF, I worked for the Rocky Mount Police Department in North Carolina for approximately nine and a half years. During my tenure with the Rocky Mount Police Department, I served as a duly sworn Task Force Officer with ATF from 2014 – 2017. During my career in law enforcement, I have conducted numerous complex case investigations involving federal and state firearms and controlled substance violations. I have also had the opportunity to work in an undercover capacity on multiple occasions to make controlled purchases of firearms and controlled substances. Prior to my career in law enforcement, I attended North Carolina State University and graduated in 2007 with a Bachelor of Arts Degree in Criminology.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth herein, there is probable cause to believe that violations of Title 18, United States Code

(U.S.C.) § 1951 (Hobbs Act) and Title 18, U.S.C. § 924(m) (Theft of Firearms from a Licensed Dealer) have been committed by RAQUAN JOHN ZIMMERMAN and DAWAN RASHWAWN SALTERS. There is also probable cause to search the information described in Attached A for evidence of these crimes further described in Attachment B.

## JURISDICTION

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.     On November 5, 2018 at approximately 2:36 p.m., the Greensboro Police Department responded to a robbery in progress at the Quick Cash Pawn located at 2707 S. Elm-Eugene St. Greensboro, NC. The call was in response to a panic alarm that had been activated by one of the employees inside of the business. Officers arrived on scene and made contact with three employees who were working at the time the robbery occurred. No patrons were inside of the store or victimized by this robbery. Employees stated that at approximately 1:55 p.m. two black males in their early 20's entered the pawn shop and requested to see some handguns. One of the black males produced a Washington, D.C. identification card, per store policy, in order to physically handle the firearms. The sale's associate could not remember any other

3

details about the identification card, only that it was from Washington, D.C. The black male inquired about purchasing one of the firearms. The sales associate informed him that he would need a North Carolina identification card in order to purchase a firearm. Both black males left the business at that time.

7.     The two black males returned to the pawn shop at approximately 2:30 p.m. While one of the black males began speaking to a sales associate, the second black male produced a handgun from a bag that he was wearing across his chest. The employees described the firearm as either a Tec-9 or Mac-10 style handgun. The suspects demanded that the store manager unlock the glass display case where handguns were kept. The suspects began to remove firearms from the display case and place them into the bag that was carried by one of the suspects. They also demanded all of the AK-47 magazines that were hanging on a wall rack behind the counter. Before leaving, the suspects stole approximately $1,800.00 in currency from the cash register and took two of the employees' cell phones. The employees were told to lie down on the ground as the suspects exited the business.

8.     An inventory by ATF Industry Operation Investigators revealed that the suspects stole twenty-one (21) handguns and two (2) pistol grip shotguns from the business. All of these firearms were entered into the National Crime Information Center (NCIC) as stolen. At the time of this affidavit, none of these firearms have been recovered by law enforcement.

9.     Quick Cash Pawn is a Federal Firearms Licensee (FFL) who conducts business with firearms dealers located outside of the state of North Carolina. Based

4

upon my training and experience as an Interstate Nexus Examiner, I am able to determine by examination of the list of stolen firearms that most, if not all, of these firearms were manufactured outside of the state of North Carolina. Therefore, I believe that the armed robbery of Quick Cash Pawn affected interstate and/or foreign commerce.

10.    On March 20, 2019, I received a phone call from ATF Special Agent (SA) Matt Leonard who is assigned to the Hyattsville, Maryland Field Office. SA Leonard advised that he had just conducted a proffer interview with an individual named Christopher Tyler. SA Leonard advised that Tyler is out of custody while waiting to be sentenced on a case being prosecuted by Prince George County, Maryland. SA Leonard stated that during this proffer, Tyler had provided information on a robbery of a gun dealer in North Carolina.

11.    SA Leonard stated that Tyler had identified two individuals who were responsible for this robbery. Tyler identified these individuals by their street names, "Ray" and "Wan". Tyler also provided Instagram names for both individuals. Tyler identified Ray's Instagram name as "**ray_dawgg**" and Wan's Instagram name as "**dbwanoo_**". Tyler advised that he had become acquainted with these individuals while hanging out at a local strip club called The Ebony Inn in Fairmount Heights, Maryland. Tyler was also able to provide information on other associates of Ray and Wan, as well as places that they frequent. Tyler has been shown photographs from the aforementioned Instagram accounts to confirm that they are the individuals whom he was referring to.

12. SA Leonard advised that Tyler knew the FFL robbery occurred sometime around late October and the beginning of November 2018 in North Carolina, but was unsure of the exact location. Tyler advised that Ray and Wan had confessed to him that they committed this robbery. Specifically, Tyler told SA Leonard that Ray and Wan had confessed to stealing approximately twenty-five (25) firearms from the FFL and had forced the employees to lie down on the ground. Tyler stated that Ray and Wan had sold the firearms in Maryland after committing the robbery. Tyler stated that the firearms were sold in November 2018.

13. SA Leonard advised that after receiving this information, he had an ATF Intelligence Research Specialist (IRS) query all FFL robberies in North Carolina during that time period. The only robbery that fit the description provided by Tyler was the robbery of Quick Cash Pawn in Greensboro, NC on November 5, 2018. It should also be noted that a total of twenty-three (23) firearms were stolen during this robbery, and that the employees were forced to lie down on the ground as the suspects exited the business.

14. SA Leonard indicated that after receiving this information from Tyler, he recalled a text message that was sent to him by a confidential and reliable informant (CI) in early November about a shipment of guns that had just arrived in Washington, DC. SA Leonard advised that the text message contained a picture of multiple firearms lying on a bed with tags still on them.

15. SA Leonard was able to locate the picture message, which he forwarded to me. I reviewed the photograph and observed that there were approximately

6

seventeen (17) handguns, two (2) pistol grip shotguns, and one (1) AK type pistol that were visible. I noted that the price tags were still on all of these firearms, as well as gun locks. By observation and review of these tags, as well as the physical characteristics of the weapons, I was able to identify the make and model of many of these firearms. I was then able to compare these make and model numbers to the list of firearms stolen from Quick Cash Pawn. I discovered that all of the firearms that I was able to positively identify were reported stolen during the robbery of Quick Cash Pawn on November 5, 2018.

16. I also observed that the text message was sent on November 6, 2018 at 12:17 p.m. The caption with the message read, *"My man out da city said shipment jus touch down."* It should be noted that this message was received by SA Leonard on the day after the robbery occurred in Greensboro, NC.

17. After receiving this information from SA Leonard, I queried Instagram and located accounts for "**ray_dawgg**" and "**dbwanoo_**". The page for "**ray_dawgg**" was public and I was able to view several photographs on this page. The page for "**dbwanoo_**" was listed as private. I was only able to view the profile picture, which was a close up photograph of the account owner.

18. While reviewing the account for "**ray_dawgg**", I was able to locate multiple photographs of the individuals believed to be Ray and Wan. Some of these pictures depicted Ray and Wan together with large sums of currency. These photographs were time stamped in November and December 2018.

19.     I compared the photographs of Ray and Wan on Instagram to the surveillance video of the robbery at Quick Cash Pawn. I noted that the physical characteristics of Ray and Wan were very similar to the physical characteristics of the suspects; however, due to the poor resolution of the surveillance footage and the positioning of the surveillance cameras, I was unable to obtain any quality facial profiles of the suspects.

20.     Later on March 20, 2019, I was contacted by SA Leonard regarding the true identities of Ray and Wan. SA Leonard advised that he had utilized several law enforcement databases to locate their true identities. SA Leonard advised that Ray's real name was RAQUAN JOHN ZIMMERMAN (DOB 03/04/1996; FBI# D0064J06D) and Wan's real name was DAWAN RASHAWN SALTERS (DOB 11/25/1999; FBI# 7CCFDHPA8). SA Leonard had compared mugshot photographs of both individuals to their respective Instagram accounts in order to make this positive identification.

21.     SA Leonard also provided me with mugshot photographs of RAQUAN ZIMMERMAN and DAWAN SALTERS. I was able to compare the photographs to images posted under both Instagram accounts. I confirmed that RAQUAN ZIMMERMAN is the person portrayed as the owner of the Instagram account: "**ray_dawgg**". I also confirmed that DAWAN SALTERS is the person portrayed as the owner of Instagram account: "**dbwanoo_**". I have also learned that SALTERS has a second Instagram account under the name "**_dbwanoo**". This account is listed as public; however, I only observed one photograph of

8

SALTERS on the timeline. I have determined that SALTERS appears to be the owner of this account as well.

22. On March 21, 2018, I responded to Quick Cash Pawn and made contact with assistant manager, Kyle Lutterloh. Lutterloh was one of the victims of the robbery on November 5, 2018. I showed Lutterloh the photograph of the firearms that SA Leonard received from the CI. Lutterloh looked at the photograph and determined that they depicted the firearms stolen from the pawn shop on November 5, 2018. Lutterloh specifically recognized several of the firearms in the photograph, including the two (2) pistol grip shotguns and a performance model Smith & Wesson revolver. Lutterloh also identified the price tags on the weapons as belonging to Quick Cash Pawn. While at the business, I compared the price tags in the photograph to price tags on firearms that were currently on display in the store. I observed that they appeared to be identical.

23. After returning to my office on March 21, 2019, I began to gather intelligence on ZIMMERMAN and SALTERS. I learned that ZIMMERMAN is on pre-trial release in Maryland for a robbery offense. The address that ZIMMERMAN reported to his supervising officer is 1404 Early Oaks Ln., Capital Heights, MD, which is just outside of Washington, DC. I conducted a driver's license query and determined that ZIMMERMAN has an active driver's license in Washington, DC. It should be noted that during the robbery of Quick Cash Pawn, one of the suspects displayed a Washington, DC identification card while asking to see a firearm. The

9

employees were unable to recall the name on the identification card, only that it was issued in Washington, DC.

24.     On March 27, 2019, I presented an application for a search and seizure warrant to United States Magistrate Judge, Joe L. Webster, related to Instagram accounts: **ray_dawgg**, **dbwanoo_**, and **_dbwanoo**. Judge Webster found that probable cause had been established for the issuance of this search warrant. I returned to my office on this same day and served Facebook with the signed search warrant.

25.     On April 9, 2019, I received records from Facebook related to the aforementioned Instagram accounts. I began to review these records on April 10, 2019. I began by reviewing the records for Instagram accounts: **_dbwanoo** and **dbwanoo_**, which I had previously identified as belonging to DAWAN SALTERS. I observed that SALTERS had registered these accounts with Instagram on December 13, 2018 and December 29, 2018, respectively. It appeared to me that **dbwanoo_** was the primary account used by SALTERS. In reviewing these records, I observed multiple pictures, as well as references to RAQUAN ZIMMERMAN. It should be noted that both of SALTERS' Instagram accounts were created over one month after the robbery occurred at Quick Cash Pawn in Greensboro, NC. As such, I was not able to locate any communications, posts, or references to the robbery of Quick Cash Pawn.

26.     Next, I began to review the records for Instagram account: **ray_dawgg**, which I had previously identified as belonging to RAQUAN ZIMMERMAN. I observed that ZIMMERMAN had registered this account with Instagram on October

10

20, 2012. I began by reviewing photographs posted by ZIMMERMAN, many of which depicted he and SALTERS together with large sums of currency. I had previously observed many of the pictures while reviewing ZIMMERMAN's public Instagram page.

27. I then began to review many of the "direct shares", or communications, between ZIMMERMAN and other Instagram users. I located a message sent by ZIMMERMAN on November 4, 2018 in which he informs another Instagram user that he is going to "North Carolina A&T". Later that same day, ZIMMERMAN informs another Instagram user that he is at "homecoming". ZIMMERMAN informs a third Instagram user later that same day that he is in "North Carolina". It should be noted that the robbery of Quick Cash Pawn occurred the following day, November 5, 2018.

28. North Carolina A&T is a university located in Greensboro, NC. Every year, North Carolina A&T holds an annual homecoming celebration which usually includes a football game, parade, concerts, and other festivities. Generally, the homecoming event is a week-long celebration which culminates with the weekend football game. This event generally draws several thousand people to the city of Greensboro and surrounding areas.

29. The 2018 North Carolina A&T homecoming football game and associated festivities were held during the weekend of November 3, 2018 through November 4, 2018. This corroborates the statements made by ZIMMERMAN on Instagram about being at North Carolina A&T for homecoming on November 4, 2018.

30.     In reviewing ZIMMERMAN's Instagram page, I searched for other references which would indicate that ZIMMERMAN may have visited North Carolina on unrelated occasions. Facebook had provided me with records pertaining to ZIMMERMAN's Instagram account beginning January 27, 2018 through March 27, 2019. Specifically, I utilized a search tool to query the Instagram records for the words "Carolina" and "Greensboro". I was unable to locate any other post or communication which would indicate that ZIMMERMAN had visited North Carolina at any other time during the period for which I had records.

31.     During my review of ZIMMERMAN's Instagram records, I observed multiple occasions throughout 2018 where he provided the number (202) 981-0442 to other Instagram users. The first time that I observed ZIMMERMAN inform another user that this was his number was during May 2018. The last time that I observed ZIMMERMAN inform another user that this was his number was on November 7, 2018, two days after the robbery occurred at Quick Cash Pawn. Shortly thereafter, ZIMMERMAN begins informing Instagram users that he has obtained a new number.

32.     Separate from my review of ZIMMERMAN's Instagram records, I had previously identified (202) 981-0442 as a possible number for ZIMMERMAN. On March 22, 2019, I was informed by ATF SA Tyler Mensing, who is assigned to the Washington II Field Office, that (202) 981-0442 was a possible number for ZIMMERMAN. SA Mensing stated that he is currently investigating ZIMMERMAN's relative, Juan Zimmerman, for firearms trafficking. During this

12

investigation, SA Mensing identified (202) 981-0442 as a possible number for RAQUAN ZIMMERMAN.

33. After receiving this information, I was able to determine that (202) 981-0442 is a mobile number carried by Metro PCS, also known as simply "Metro". Metro PCS is a prepaid wireless carrier brand which is owned and operated by T-Mobile. On March 26, 2019, I submitted a request to T-Mobile for the preservation of records related to mobile number (202) 981-0442.

34. Based upon my review of ZIMMERMAN's Instagram records, and in conjunction with the information received from SA Mensing, I believe that (202) 981-0442 is the mobile number that was utilized by ZIMMERMAN for several months during 2018. Specifically, I believe that (202) 981-0442 is the mobile number that was utilized by ZIMMERMAN on November 5, 2018, which is the date that the robbery occurred at Quick Cash Pawn in Greensboro, NC.

## HISTORICAL CELLULAR TELEPHONE RECORDS

35. I know from my training and experience that when a person makes or receives a call using a cellular telephone their mobile device will be connected to cellular telephone sites and other wireless networks. I also know that cellular telephones generally connect to the cellular telephone tower associated with the strongest signal from the appropriate network provider. I know that cellular telephone providers can often provide detailed records of all in-coming and out-going calls, text messages, voice mail messages, estimated geo-location information and other data that are processed through a specific cell site for a given date and time.

36.     I know that locating a particular mobile user's device may result in the discovery of additional evidence that may be stored on the mobile device. Live and deleted data recovered from mobile devices may show evidence of current, on-going, future, and past criminal activity. Such information can be used to identify victims, witnesses, associates and co-conspirators. I also know that data from these devices can often include user attribution data that can identify the person(s) who sent, received, created, viewed, modified, or otherwise had control over particular content.

37.     I also know from my training and experience that Mobile Network Operators ("MNOs"), such as T-Mobile, commonly collect and store historical precision location information that may provide historical geographic location of a user's mobile device. This data may provide the approximate location of the user's mobile device. Based on my training and experience, I know that T-Mobile collects precision location data, which T-Mobile also refers to as "Time Difference of Arrival" (TDOA) or Timing Advance Information. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

38.     Additionally, I know from my training and experience that cellular telephone providers maintain account records on users and particular devices connected to their networks. I also know that when cellular telephone calls are completed, the cellular telephone companies record and retain certain information including in-coming and out-going numbers, the time and duration of calls, voice mail, browsing data, text messages ("SMS"/"MMS"), Internet Protocol ("IP") connection logs, and the towers and sectors that handled the calls. I know from my

training and experience that the numbers obtained from these records can be used to obtain the subscriber information for a particular cellular telephone provider in an effort to identify a potential suspect (or suspects). These records can be further analyzed to determine specific activity during a particular time frame and geographic area.

39.     I also know that cellular telephone records, commonly referred to as Call Detail Records ("CDRs") and other records such as TDOA and Timing Advance Information, may support evidence of current, on-going, future, and past criminal activity. I know that such information can be used to identify victims, witnesses, associates and co-conspirators. I also know that data from these devices can often include Cell Site Location Information ("CSLI") that may provide network, cell tower, and/or antenna data that serviced a particular mobile device as well as precision location information that may provide an estimate of a user's mobile device location. I also know from my training and experience that this information is available through particular cellular telephone providers and that these providers operate as public utility companies. I also know that by obtaining CSLI on the dates before and after an event can tend to prove that the user had possession of the mobile device during the relevant time period.

40.     I also know that by obtaining CSLI on the dates before and after an event can tend to prove that the user had possession of the mobile device during the relevant time period. Additionally, I have found that by obtaining CSLI for several weeks before and after the crime under investigation, I am able to establish a "pattern

15

of life" for the person whom I am investigating. This often leads to the discovery of evidence that can either be incriminating or exculpatory. Based upon my training and experience, it is important to determine whether or not the suspect's mobile device was utilized near the scene of the crime during the time it occurred, but it is just as important determine how often the suspect frequents that area.

41. I also know that it is necessary to obtain subscriber information to properly identify individuals who may be associated with telephone numbers revealed from the received Call Detail Records.

## AUTHORIZATION REQUEST

42. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) as well as Federal Rule of Criminal Procedure 41. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1951 (Hobbs Act) and Title 18 U.S.C. § 924(m) (Theft of Firearms from a Licensed Dealer) have been committed. There is also probable cause to search the records described in Attachment A for evidence of this crime, as further described in Attachment B.

43. I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control. Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

16

This affidavit has been reviewed by Assistant United States Attorney Nicole DuPré.

Respectfully submitted,

Michael B. Newsome
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn and subscribed before me this 12th day of April 2019.

THE HONORABLE L. PATRICK AULD
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF NORTH CAROLINA

17